NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TODD RESCH, *Petitioner*, v. CATLIN INDEMNITY COMPANY, *Respondent*. | Civil No.: 19-8699 (KSH) (CLW) **OPINION** |

**Katharine S. Hayden, U.S.D.J.**

## I. Introduction

This matter comes before the Court on the petition of Todd Resch to vacate an arbitration award issued in the context of a dispute between him and his insurer, Catlin Indemnity Company, over his fire-damaged boat. The Court denies the petition.

## II. Background

The factual background is straightforward and undisputed. Resch owns a pleasure boat that was damaged in 2015 while it was docked in a marina located in Stony Point, New York after a nearby boat caught fire. Resch made a claim for the damage under an insurance policy (the "Policy") that he held with Catlin. The surveyor Resch hired determined that the boat was a total loss. Catlin's surveyor disagreed. Unable to resolve the dispute, Resch invoked the following provision in the Policy:

> If we fail to reach an agreement with you regarding **cause of loss, extent of related damages or reasonable repairs** related to any property loss, either you or we may make written demand for appraisal. Within thirty (30) days after receipt of an appraisal demand, we and you will each select a competent, impartial appraiser with no prior involvement with the yacht or occurrence. The two (2) appraisers will review the loss and come to an agreement in regard to the facts in dispute. If the two (2) appraisers cannot reach an agreement, they will select an additional, mutually-acceptable, impartial umpire, with no prior

1

involvement with the yacht or occurrence who will make a binding and enforceable determination. The agreement of the appraisers, or decision of the umpire, will be binding and enforceable against either you or us in a court of competent jurisdiction. We and you will each pay the cost of our own selected appraiser and will share any umpire's fees equally.

(D.E. 2, Petition, Ex. A, Policy § 4.18 (emphasis added).)

The surveyors[1] selected by the parties could not reach agreement, and ultimately Robert Schofield, a naval architect and engineer, was appointed as impartial umpire.[2] The parties sent him a joint letter on September 28, 2018, outlining the dispute, stipulating to certain facts, and addressing procedural matters, including the logistics of submissions from the parties' surveyors and payment of expenses. (Petition, Ex. C, Joint Retention Letter.) The letter also contemplated Schofield's inspection of the boat. (*Id.*) In characterizing the issue, the letter stipulated that "[a] dispute ha[d] arisen between Mr. Resch and Catlin regarding the **extent of related damages or reasonable repairs** resulting from such exposure" to the fire from the other boat. (*Id.* (emphasis added).)

Schofield issued a report on December 17, 2018. (Petition, Ex. D, Impartial Umpire's Report.) On page 2 Schofield listed the rules of his engagement, pursuant to the retention letter and a joint teleconference that preceded it:

   (1) I was tasked to attend an inspection of the subject boat, jointly attended by the two named surveyors for Insured and Underwriters.
   (2) I was tasked to review reports submitted to me by surveyors and/or appraisers appointed by each of the two parties in contention.
   (3) I was tasked to determine the cause of the loss, extent of damages resulting from the cause of the loss, and determine the reasonableness of methods and cost of proposed repairs to restore the insured vessel condition before the loss.

---

[1] Although the policy uses the phrase "appraisers," the parties' submissions consistently refer to these professionals as "surveyors." The Court will use the same convention.

[2] Schofield's retention as impartial umpire followed Resch's lawsuit filed to compel his appointment. *See* Civ. Action No. 18-12475 (D.N.J.). Resch dismissed the suit shortly after filing, purportedly upon Catlin's agreement to the appointment. (*See* D.E. 5, Catlin Opp. 3-4.)

(Impartial Umpire's Report at 2.) Schofield's report detailed his inspection of the vessel and study of the documentation provided to him on behalf of the parties, along with his own relevant experience and his conclusions as to the extent of damages to the vessel and the cost and methods of repair he determined to be reasonable. The report evaluated the repair quotes provided by Catlin, noting that one was in the amount of $35,854.50, "with additional replacement, storage and related costs" bringing that estimate to $41,867. (*Id.* at 6.) To that amount would be added "fuel costs, storage, bottom painting, haul-out etc.," bringing "the total repair cost to about $45,000." (*Id.*) Another repair quote totaled $36,858, to which "fuel costs, storage, bottom painting, haul-out etc." would be added, resulting in the "total repair cost [coming] again to about $45,000." (*Id.*) The report went on to detail the reasons why Schofield rejected the opinions and conclusions Resch submitted. (*Id.* at 7-9.) Schofield ultimately concluded as follows:

> On the basis of the tendered quotation for repair, Extent of Loss is therefore established as the quoted cost of repair of $41,867, plus transportation and ancillary dockyard costs, including hull bottom antifouling recoating, yard storage fees and related costs, approximately $45,000, all.

(*Id.* at 6.)

The report ended with the following paragraph:

> I may have additional opinions in this matter, pending my review of additional produced reports and materials. Should any other Experts' reports become available between the issuance of this Report and conclusion of this matter, the Undersigned reserves the right to analyze, study, calculate and compare such information as it becomes available.

(*Id.* at 9.) In a January 29, 2019 email to the parties, Schofield clarified an aspect of his report and observed that his assignment had been completed. (D.E. 2-6, 1/29/19 Email.) On March 18, 2019, Resch filed his petition to vacate.

## III. Standard of Review

"There is a strong presumption under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, in favor of enforcing arbitration awards." *Brentwood Med. Assocs. v. UMW*, 396 F.3d 237, 241 (3d Cir. 2005) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). An arbitration award is presumed valid unless affirmatively shown to be otherwise, *id.*, and is reviewed extremely deferentially, although the Court is not a mere rubber stamp, *Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United Healthcare Workers East*, 817 F.3d 857, 861 (3d Cir. 2016). The award may only be attacked as invalid on one or more of the grounds in 9 U.S.C. § 10, or as against public policy. *Brentwood*, 496 F.3d at 241.

Resch invokes 9 U.S.C. § 10(a)(4), under which the Court may vacate an arbitration award where the arbitrator exceeded his powers or "so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." An arbitrator only "exceeds his powers" when "he decides an issue not submitted to him, grants relief in a form that cannot be rationally derived from the parties' agreement and submissions, or issues an award that is so completely irrational that it lacks support altogether." *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219-220 (3d Cir. 2012). "In other words, the task of an arbitrator is to interpret and enforce a contract. When he makes a good faith attempt to do so, even serious errors of law or fact will not subject his award to vacatur." *Id.* at 220. *See also Brentwood*, 396 F.3d 237 (upholding arbitration award even though arbitrator relied on language not in parties' agreement).

An arbitration award is "mutual, definite and final" if it "'resolves all issues submitted to arbitration, and determines each issue fully so that no further litigation is necessary to finalize the obligations of the parties.'" *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props.*, 102 F.3d 677,

4

686 (2d Cir. 1996) (quoting *Dighello v. Busconi*, 673 F. Supp. 85, 90 (D. Conn. 1987), *aff'd*, 849 F.2d 1467 (2d Cir. 1988)); *accord Robinson v. Littlefield*, 626 F. App'x 370, 373-74 (3d Cir. 2015); *Kennington, Ltd. v. Wolgin*, 1998 U.S. Dist. LEXIS 6645, *6-7 (E.D. Pa. May 6, 1998). Similarly, the award must be "clear enough to indicate what each party is required to do." *Dighello*, 673 F. Supp. at 90.

## IV. Analysis

Resch's petition falls well short of the standards for vacatur of an arbitration award. First, Resch contends the umpire exceeded his powers by allegedly determining "actual loss," which he claims was beyond the issues submitted to him. It is undisputed that the Policy calls for the umpire to determine the "extent of related damages or reasonable repairs," and that the parties tasked him with doing so. (*See* Policy § 4.18; Joint Retention Letter.) Resch's issue is with how the umpire interpreted that phrase: Resch contends that it did not encompass "fixing a specific . . . dollar value to the total amount of the loss." (Petition ¶ 4.) He seems to believe that the Policy contemplates his first repairing the boat before a specific dollar amount is determined. But these are issues of contract interpretation that were squarely within the umpire's purview, and even if there were "serious errors of law or fact" – which, in any event, Resch has not demonstrated – it is not up to the Court to fix them. It is clear from the record that the umpire made a good faith effort to interpret the Policy language he was charged with enforcing and implementing, and the report's conclusion the "Extent of Loss is . . . established as the quoted cost of repair of $41,867, plus transportation and ancillary dockyard costs, including hull bottom antifouling recoating, yard storage fees and related costs, approximately $45,000, all" (Impartial Umpire's Report at 6) is rationally grounded in the language of the Policy and in the materials submitted to him, as well as in his own inspection of the boat.

Resch's argument that the award is indefinite is similarly unavailing. Although the umpire's report left the door open for further evaluation, his January 29, 2019 email decisively closed it, observing that the assignment was concluded. The report included a dollar figure and the components in it, and requires no further litigation to finalize each side's obligations—in particular, Catlin's obligation to pay. *Cf. Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980) (vacatur under appropriate on this ground "only when arbitrators 'imperfectly execute' their powers and make an award that purports to be final, but is in fact not"); *see also Maignan v. Autoworks*, 2020 U.S. Dist. LEXIS 37803, *10-11 (D.N.J. Mar. 4, 2020) (Rodriguez, J.) (denying vacatur under 9 U.S.C. § 10(a)(4) where arbitrator elucidated components of decision, which included estimates). Although not dispositive, Catlin observes that it did tender a check in the full amount, $45,000, to Resch. (*See* D.E. 5-9, Ex. H to Catlin Opp.) Resch takes the position that the award could not be final because he had not yet actually had the repairs completed, and therefore there was no precise dollar figure available, only estimates. But this is, in substance, another attack from a different angle on the umpire's interpretation of the Policy. Resch's position appears to be that the Policy called for the umpire to simply decide whether the boat was a total loss, and if not, and repairs were to be made, Resch would first undertake the repairs and present the actual repair bills for reimbursement. But whether that was the correct interpretation was up to the umpire, and it is not for the Court to second-guess.

In view of the Court's disposition of Resch's petition on the merits, the Court need not reach Catlin's argument that the petition was untimely.[3]

---

[3] As the Court previously observed (D.E. 7), Resch filed two petitions to vacate, rather than a petition and motion. He then erroneously filed his reply in support of the petition as a motion (D.E. 8), which will be terminated.

## V. Conclusion

For the reasons set forth above, the petition to vacate is denied. An appropriate order will issue.

Date: March 23, 2020

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.